## Case No. 12,698.

### SHAKELEY et al. v. TAYLOR et al.

### [1 Bond, 142.] 1

Circuit Court, S. D. Ohio. Oct. Term, 1857.

ADMINISTRATORS — FIDUCIARY RELATIONS — PURCHASE AT SALE—INSOLVENT ESTATE— WHO MAY IMPEACH.

1. The law is well settled, that a person occupying the position of a fiduciary can not be a purchaser of the trust property, even in the absence of any ground for the presumption of actual fraud.

2. Where three persons were administrators of an insolvent estate, and had obtained an order from the probate court for the sale of the decedent's land to pay debts, and at the sale a note was taken for a part of the purchase money, payable to the administrators, upon which suit was brought, judgment obtained, and the property offered for sale by the sheriff on execution, and at the sale one of the administrators became the purchaser at two-thirds of the appraisement: *held*, that such administrator did not occupy a fiduciary relation to the land, and that the sheriff's deed vested a good title in him.

· 3. If the purchaser could be viewed on any ground as a trustee, under the facts of this case, the creditors of the insolvent decedent, and not the heirs, would be the proper persons to impeach the sale.

[This was a bill by Eliza Shakeley and others against A. M. Taylor and others. Heard on demurrer to the bill.]

Mills & Hoadly, for complainants.

Ball & Skinner and Collins & Herron, for defendants.

OPINION OF THE COURT. The questions submitted in this case arise on a demurrer to a bill in equity. The facts set forth in the bill may be briefly stated as follows: In 1816, James K. Bailey died without issue, intestate and insolvent, seized of an interest of one undivided half in certain real estate in ·Cincinnati, which he held in common with one John B. Enness, leaving a widow, Eliza Bailey, since deceased, and a sister, Susan Shakeley, wife of Robert Shakeley, a citizen of Adams county, in the state of Pennsylvania, his only heirs at law. Susan Shakeley died in said county in 1825, leaving several children, all of tender age, who, including the heirs of one since deceased, are the complainants in this case. Eliza Bailey, widow of James K. Bailey, and William Barr and James Keys, were duly appointed administratrix and administrators

1 [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

of the estate of said Bailey; and having filed their petition in the probate court for the sale of the interest of said Bailey, in the real estate described in the bill, to pay the debts owing by his estate, in March, 1817, an order of sale was made by said court, and in pursuance thereof, in September, 1818, the property was sold to Samuel Still, for the sum of two thousand dollars; for which he executed his notes in equal amounts, payable in one, two, and three years, secured by mortgage. The sale was approved of, and confirmed by the court of probate, and a deed was made by the administrators. The sale, it appears, was made free from any claim of dower by the widow, but with the understanding that, in lieu of dower, she should receive the interest on one-third of the purchase money during her life, and that, at her death, the principal should be returned to the estate, and applied to the payment of the debts. The purchaser, Still, having failed to pay the notes given for the purchase money, was sued ·on one or more of them; and in 1824, the administrators of Bailey obtained a judgment against him, in the court of common pleas of Hamilton county. Execution was issued on this judgment, which was levied on the property described in the bill; of which said Still was then the sole owner, having previously purchased the undivided interest of said Enness therein. In 1826, the property was offered at public sale by the sheriff of Hamilton county, upon the execution issued as before stated, and was sold to said William Barr for $1,868, that being ·two-thirds the appraised value. This sale was confirmed by the court, and an order made requiring the sheriff to execute a deed to the purchaser. The sheriff by his deed, dated August 31, 1826, conveyed the premises to William Barr, under whom the defendants in this case severally claim title. It is alleged that these defendants purchased with notice of the facts charged in the bill; and the complainants pray that the purchase made by Barr, as above mentioned, may be held to be a purchase in trust for them; and that on being reimbursed to the amount paid by them, with interest, the present claimants may be decreed to convey the portions of the property held by them respectively ·to the complainants, and also to account to them for the rents and profits. It is also averred in the bill, that the complainants are now, and have been since their birth, residents of Pennsylvania, and until recently were minors: and had no knowledge of the facts set forth in their bill till about the year 1853.

Upon the facts thus alleged in the bill, the main inquiry presented by the demurrer relates to the character and legal effect of the purchase of the property by Barr, one of the administrators of the decedent, Bailey. The complainants insist that Barr occupied a fiduciary relation to the property, and that the purchase falls within the settled rule of

law, which, on grounds of public policy, prohibits a trustee from purchasing property held in trust. And they ask that the conveyance to Barr may be held to be a deed of trust, and as such inuring to the benefit of the complainants, as the legal heirs of Bailey. In support of the demurrer to the bill, it is contended: 1. That Barr did not stand in the relation of a trustee, and that the sale and conveyance vested in him a perfect title in his own right. 2. That as the estate of Bailey was largely insolvent, if a trust estate can be created, Barr holds the property as the trustee of the creditors of Bailey, who alone are interested in the question; and that the creditors, not being made parties to the bill, no decree can be entered in the case. 3. That if these complainants ever had a claim to relief, they are barred by the lapse of time and the statute of limitations.

It is not proposed to examine the numerous cases referred to by the counsel for the complainants, to sustain the doctrine that a trustee can not purchase the property held by him in trust. It is undeniably true, that while some courts of the highest respectability have limited the application of the doctrine to cases where, from the facts, there was either actual or constructive fraud on the part of the trustee, the current of decisions is against the validity of purchases by any one holding a fiduciary relation to the property sold, without any inquiry as to the circumstances of the sale, or the motive of the trustee in becoming a purchaser. The courts hold, with great propriety and force of reasoning, that sound policy requires that persons in a fiduciary character should have no temptation to use trust property for their own benefit and to the injury of the cestui que trust. And if the present case falls within this principle, the relief sought for by these complainants must be awarded, unless denied to them on other grounds. But the court do not perceive the applicability of the rule referred to, to the case stated in this bill. Barr, the purchaser of the property in question, was one of three administrators of an insolvent estate. Upon a proper showing to the probate court, by the administrators, that it was necessary to sell the real estate of the decedent to pay debts, an order for that purpose was made, under which Still became the purchaser of the property. The administrators made return of the sale, and the usual order for its confirmation was made, and also an order that the administrators should convey the "premises to the purchaser." A deed was accordingly executed, which vested the legal title to the property in the purchaser, Still. From that time, the administrators were separated from all connection with it as fiduciaries. It appears that subsequently, in default of the payment of the notes given by the purchaser for the real estate sold, it became necessary to bring suit on one or more of these notes, in which

suit the names of the three administrators were used as plaintiffs. A judgment was obtained by the administrators; and upon an execution against the defendant, the property purchased by him at the sale by the administrators, as also the undivided half which he had acquired by purchase from Enness, was levied upon. Having been duly appraised and advertised, as required by law, it was offered at public sale by the sheriff of Hamilton county, and Barr, being the highest bidder, was the purchaser. The sale thus made was confirmed by the proper court, and in pursuance of the order of the court, the sheriff conveyed the property to Barr.

It may be remarked here, that there is no allegation in the bill, nor any ground presented for an inference, that these proceedings were not conducted in the most perfect good faith. The sum bid for the property by Barr being two-thirds its appraised value, after applying one-third to the satisfaction of the widow's claim of dower, was paid to the administrators, and by them distributed to the creditors of the estate. Neither is there any averment in the bill that Barr made any profit for himself by the purchase.

The main ground on which courts have rested their condemnation of fiduciary purchases is, that the trustee has control of the sale of the property, and thus is exposed to the temptation of resorting to fraudulent management in the sale, thereby to subserve his own interests, at the sacrifice of the interests of those for whom he is the trustee. Hence, at a sale by administrators or executors of property belonging to their decedent, they are not allowed to become purchasers, for the reason that they appoint the time and place, and have the entire management of the sale. But this has no application to the sale at which Barr was the purchaser. The property sold to him was not trust property, the title, legal and equitable, having vested in Still, the defendant in the execution. It was levied on and sold to satisfy the execution against him. The sale, and all the proceedings connected with it, were conducted by the sheriff, the officer who by law was authorized to perform this duty, without any interference or attempted control on the part of Barr or his co-administrators. It would seem to be a clear proposition that a sale thus made is not liable to the objections which usually invalidate a fiduciary sale. It is clearly not within the principle on which such sales are held to be void, for the reason that the purchaser, though his name as an administrator was necessarily used in the suit against Still, had no control over the sale. It was impossible, therefore, that, by any agency on his part, he could prevent the fullest competition at the sale, or by any device or management effect a purchase at an unfair price.

Two cases have been referred to by counsel, one from the Vermont and one from the Georgia Reports, in which it is said the court

ignored the distinction between a purchase by an administrator or executor of property held as the representative of a decedent, and property levied on to satisfy a judgment in which an administrator or executor is a party plaintiff. I have not had an opportunity of referring to these cases, and do not, therefore, know the precise grounds on which the decisions were placed. But, considering the distinction intimated as obvious, and as entitled to a controlling influence in the consideration of the question, I am not prepared to sanction the doctrine which the cases cited are supposed to sustain. It is not within the reason of the rule of law condemning fiduciary purchases, and there is certainly nothing in the facts presented in the bill requiring so stringent an application of the doctrine. As before intimated, there does not appear to have been any unfairness, much less fraud, in the purchase of the property in question. It was sold at its fair value, and its proceeds applied to the payment of the debts owing by the estate. But, if the facts presented warranted the implication that Barr, the purchaser of the property, can be viewed as having acquired merely a trust estate, the inquiry may properly be made, to whose benefit did the trust inure? The estate of the decedent Bailey was insolvent, and paid only fifty cents on the dollar of the debts owing. It would seem, therefore, that his heirs could have no possible interest in the sale and disposition of his estate, as there is no pretense that in any event there would have been any surplus for distribution after the payment of the debts. If, therefore, there is any ground of complaint against the administrators, it should be urged by the creditors, and not by the heirs of Bailey. But the creditors are not parties to this bill and ask nothing at the hands of this court. And this is a full answer to the prayer of the bill, so far as the equities of the heirs are concerned. The case of Chronister v. Bushey, 7 Watts & S. 152, is cited as sustaining the doctrine that it is the right of the heirs to impeach a sale by an administrator or executor, even where the estate is insolvent. In that case, however, the property purchased belonged to the estate of which the administrator was the representative. It was, in fact, a sale by the administrator, and of which he had the entire control, and there were facts in the case justifying the inference of fraud on the part of the administrator. It was possible, that if the sale had been fairly made and the property sold at its full value, there might have been a residuum for the heirs. The court held, therefore, that as the heirs had a remote or contingent interest in the sale, it was competent for them to impeach it without the interposition of the creditors of the estate. It is not necessary to inquire into the correctness of the decision in the case referred to. The facts in that case have no analogy to those in the case before the court, and the

law as sanctioned by the Pennsylvania court has no application to this case.

Regarding the reasons stated as conclusive against the right of the complainants to the relief sought for, the demurrer is sustained and the bill dismissed. It is not therefore necessary to inquire or decide whether the complainants are barred by the statute of limitations or the lapse of time.